**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00173-DOC-KES                                    Date: August 15, 2023

Title: NICOLE FREELING V. PCX, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [14]

Before the Court is Defendant PCX Inc.'s ("Defendant" or "PCX") Motion to Dismiss Plaintiff Nicole Freeling's ("Plaintiff") First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth causes of action, as alleged in the First Amended Complaint, ("Motion" or "Mot.") (Dkt. 14).

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.    Background**

This action arises out of the alleged discrimination that Plaintiff Nicole Freeling, an African-American woman, experienced during her employment training period with Defendant PCX from June 20, 2022 until June 25, 2022. *See generally* First Amended Complaint ("FAC") (Dkt. 12). On May 10, 2022, Plaintiff received an email from a PCX recruiter describing the availability of a Remote Account Manager position with PCX and providing the salary details. FAC ¶ 8. Plaintiff had a total of three interviews with Defendant—first, with a PCX recruiter, then the Vice President (VP) of Sales, and finally, the CEO of PCX. *Id.* ¶ 9. Plaintiff received an offer letter on June 1, 2022, which deducted the salary from $4,000 to $3,500. *Id.* ¶ 10. When Plaintiff asked the VP of Sales

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES　　　　　　　　　　　　　　　　　　　Date: August 15, 2023
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2

why the salary was deducted, the VP responded that Plaintiff lacked industry experience in the "electronic components" field. *Id.* Defendants subsequently informed Plaintiff that a week of training would take place in-person at PCX's office in Huntington Beach, California beginning on June 20, 2022, through June 24, 2022. *Id.* ¶ 12. Defendants noted they would provide Plaintiff's flight and hotel stay and would later reimburse her for any out-of-pocket expenses, such food and Uber rides. *Id.* ¶ 13. On June 20, 2022, Plaintiff arrived at the PXC office for the first day of training and met other new hires, including two Account Managers—a black male and a Caucasian female. *Id.* ¶ 14. During lunch, CEO Gilles Aouizerat "brought up that a law passed and made Juneteenth a 'real' holiday" and "look[ed] at plaintiff and the other new black employee when asking." *Id.* ¶ 15. During the sales training, Plaintiff contends that she and the other black employee were "subjected to harsh critical feedback . . . while Caucasian employees are not." *Id.* ¶ 16. On the second day of training, CEO Aouizerat had the new hires participate in script-reading and told them "to give feedback to one another." *Id.* ¶ 18. Plaintiff received feedback from her white counterpart that she used too many "um's" in her reading, and CEO Aouizerat added that it makes Plaintiff "look stupid and not intelligent." *Id.* ¶ 19. When Plaintiff gave feedback to her white counterpart, CEO Aouizerat "would interject on whatever feedback Plaintiff would give" and "say 'not necessarily.'" *Id.*

　　　　On the third day of training, Plaintiff discovered that she and the other employees were paid differently. *Id.* ¶ 20. Although none of the employees had previous "electronic components" experience, Plaintiff's white counterpart was paid $4,000 and the other black employee was paid $3,000. *Id.* ¶¶ 21-22. Plaintiff then witnessed the other Black new employee being fired over the phone for running late while the other employees heard him "pleading for another chance through the phone." *Id.* ¶ 23. Over the next few days, CEO Aouizerat continued to be combative and confrontational towards Plaintiff. *Id.* ¶¶ 25-30. On Saturday, June 25, 2022, Plaintiff received a call from a PCX sales manager who told Plaintiff that the CEO was letting her go because of her background check and informed her that "this is another situation" like the black employee who was fired over the phone. *Id.* ¶ 32. The sales manager proceeded to inform Plaintiff that upon sending the computer equipment back to the PCX facility, PCX would release a one-thousand-dollar payment to Plaintiff. *Id.* ¶ 34. At that point, the sales manager made another refence "to the Black employee who was fired by saying [the CEO] Gil is giving you a thousand dollars just like him." *Id.*

　　　　Plaintiff subsequently followed up with the county traffic court regarding her background check. *Id.* ¶ 37. She discovered that her background check erroneously showed outdated driving violations that should have since been deleted. *Id.* After updating her traffic record, Plaintiff discovered that "Defendant did not take an adverse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES               Date: August 15, 2023
                                             Page 3

action against the Caucasian new employee that has a more serious and recent driving violations on the record." *Id.* ¶ 40. On Wednesday, June 29, 2022, Plaintiff received an email from PCX Human Resources informing Plaintiff that they will send Plaintiff the $1,000 payment but waiting on "confirmation from management that the equipment was received as condition to the payment." *Id.* ¶ 41. The email also included a Waiver and Release of Liability form that "had the name of the new Black employee that was fired days prior to Plaintiff's termination." *Id.* ¶ 42. Plaintiff chose not to sign or return either document. *Id.*

On Thursday, June 30, 2022, Plaintiff received another email from Human Resources stating that they deposited a payment of less than $1000 into Plaintiff's bank account. *Id.* ¶ 46. The PCX HR Manager stated in the email that the liability release forms were "specifically part of the condition to release" the full payment of $1,000. *Id.* Almost a week later, Plaintiff received a text message from the sales manager to "sign those forms and get $1000." *Id.* ¶ 47.

On August 8, 2022, Plaintiff requested that Defendant provide a position statement to the Equal Employment Opportunity Commission (EEOC). *Id.* ¶ 48. In the position statement, Defendant provided another reason for Plaintiff's termination, having to do with Plaintiff's performance. *Id.*

Plaintiff filed this action on February 28, 2023, bringing nine causes of action against Defendant: (1) Race Discrimination in Violation of 42 U.S.C. § 1981; (2) Hostile Work Environment Based on Race in Violation of U.S.C. § 1981; (3) Race Discrimination (Disparate Treatment) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a); (4) Hostile Work Environment Based on Race in Violation of Title VII of Civil Acts of 1964, as amended, 42 U.S.C. § 2000e-2(a); (5) Race Discrimination (Disparate Treatment) in Violation of FEHA, Cal.Gov't Code §12940(a); (6)  Hostile Work Environment Based on Race in Violation of FEHA, Cal. Gov't Code § 12940; (7) California Equal Pay Act Based on Race in Violation of Labor Code Section 1197.5(a); (8) Fair Chance Act: (Criminal Background) Based on Race in Violation of Cal. Gov't Code § 12952; and (9) Immediate Payment of Wages and Waiting Time Penalties Pursuant to California Labor Code §§ 201-203.

On April 4, 2023, Defendant filed a Motion to Dismiss ("Motion" or "Mot.") (Dkt. 14). On April 21, 2023, Plaintiff filed a Motion to Expedite Discovery (Dkt. 15), which the Court granted on June 5, 2023 (Dkt. 22). Plaintiff also opposed Defendant's Motion to Dismiss ("Opp'n") (Dkt. 16). On May 5, 2023, Defendant filed a reply ("Reply") (Dkt. 19).

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.  Discussion

Case 8:23-cv-00173-DOC-KES   Document 38   Filed 08/15/23   Page 5 of 8   Page ID #:463

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES                                      Date: August 15, 2023
                                                                          Page 5

Defendant argues that Plaintiff's discrimination claims, as alleged in Plaintiff's First, Second, Third, and Fourth causes of action, fail to satisfy the "but for" standard established by the Supreme Court in *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (holding that "a plaintiff bears the burden of showing that race was a but-for cause of its injury"). *See* Mot. at 6.

For Plaintiff's Fifth, Sixth, Seventh, Eight and Ninth Causes of action, Defendant argues that Plaintiff "fails to specify the dates she submitted both complaints to the EEOC and []DFEH" or attach any Right-to-Sue letters "as direct evidence of compliance" with the administrative exhaustion requirement. *Id.* at 6-8.

In opposition, Plaintiff maintains that her allegations as to all causes of action are sufficient at the pleading stage. Plaintiff also attached the "right to sue" documents from both EEOC and DFEH agencies. *See* Opp'n at 12-14.

### A. Administrative Exhaustion

Under both Title VII and FEHA, exhaustion of administrative remedies is a prerequisite to resort to the courts. *Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir.2002); *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57 (1995). Under Title VII, a plaintiff must file a complaint before the Equal Employment Opportunity Commission ("EEOC") and under FEHA, a plaintiff must file a complaint before the Department of Fair Employment and Housing ("DFEH"). *See Lelaind v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008). In contrast to Title VII and FEHA, 42 U.S.C. section 1981 claims do not require administrative exhaustion. *See* 42 U.S.C. §§ 1981; *Metoyer v. Chassman* 504 F.3d 919, 947 n. 11 (9th Cir.2007) (administrative exhaustion not required under 42 U.S.C. section 1981).

In her opposition, Plaintiff attached notices from the California Civil Rights Department and the Equal Employment Opportunity Commission (EEOC) providing Plaintiff with notices of her Right to Sue. *See* Opp'n at 38, 40. Accordingly, Plaintiff's action before this court is proper.

### A. Plaintiff's First, Third, and Fifth Causes of Action: Disparate Treatment in violation of Section 1981, Title VII, and FEHA

Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES		Date: August 15, 2023
		Page 6

because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1). FEHA uses largely the same language and promotes the same objective as Title VII. *See* Cal. Gov. Code § 12940(a); *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); *Reno v. Baird*, 18 Cal.4th 640, 647 (1998). "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). As a result, the Title VII framework is applied to claims brought under Section 1981 and FEHA, including discrimination claims brought under a disparate treatment theory.

A plaintiff may establish a prima facie case of disparate treatment by showing: (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position he held, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (2000); *see also Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (setting forth substantially the same elements in the Title VII context). Often the fourth element is stated as "similarly situated individuals outside his protected class were treated more favorably." *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).

Plaintiff's allegations here establish a prima facie case of racial discrimination. Plaintiff is an African-American woman who was hired for the position of Account Manager and was undergoing training, during which a black employee was terminated. Although Defendants informed Plaintiff that the reason for her termination was her background check, Plaintiff soon discovered that a white employee whose background check returned more severe traffic violations was not terminated. The sales manager that informed Plaintiff of the termination decision also informed her that "this is another situation" like the black employee who was fired over the phone during the training period. *See* Compl. ¶ 32.

Because Plaintiff sufficiently alleged disparate treatment on the basis of her race in violation of Section 1981, Title VII, and FEHA, Defendant's Motion to dismiss Plaintiff's First, Third, and Fifth Causes of Action is DENIED.

### B. Plaintiff's Second, Fourth, and Sixth Causes of Action: Hostile Work Environment in violation of Section 1981, Title VII, and FEHA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES  Date: August 15, 2023
Page 7

Hostile work environment claims under Title VII contain the same elements of a § 1981 hostile work environment claim and, thus, the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir. 2003). To establish a prima facie case for a hostile-work environment claim, a Plaintiff must show that (1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

In considering whether the discriminatory conduct was "severe or pervasive," courts look to "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir.2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). A hostile work environment, by its "very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). At the motion to dismiss stage, a plaintiff need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of a hostile work environment claim. *See Twombly*, 127 S.Ct. at 1974; *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir.2008) ("Even though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))).

Plaintiff's allegations here fail to establish that Defendant's conduct was "sufficiently severe or pervasive" to amount to a hostile working environment. Although another black employee was fired over the phone in front of the new hires, "an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that [such] harassment has become a permanent feature of the employment relationship." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir.1999). Additionally, Plaintiff's allegations that she received more critical feedback during her training period than her white counterpart fail to establish that the comments were not performance-related and, moreover, fall short of the sufficiently severe or pervasive comments to sustain a hostile-work-environment claim. *Cf. Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) (allegations sufficient to sustain a hostile-working environment claim where physician alleged that another doctor uttered a racial epithet and moved as if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00173-DOC-KES                                                              Date: August 15, 2023
Page 8

to strike him and nurse made frequent requests that physician perform the tasks of a maintenance man).

Accordingly, Defendant's Motion to dismiss Plaintiff's Second, Fourth, and Sixth Causes of Action is GRANTED.

### IV. Disposition

For the reasons described above, Defendant's Motion to Dismiss (Dkt. 14) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Second, Fourth, and Sixth Causes of Action are hereby DISMISSED without leave to amend.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                         Initials of Deputy Clerk: kdu

CIVIL-GEN

s