Nicole Freeling
8631 Sierra Ridge Dr. Apt F.
Indianapolis, In 46239
317-500-8757
Plaintiff in Pro per
n.freeling@outlook.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CAIFORNIA, SANTA ANA DIVISION

JURISDICTION

NICOLE FREELING

               Plaintiff,

vs.

PCX, INC., a California Corporation; and DOES

1through 50,

               Defendant

**Case No**:  8:23-cv-00173-DOC-KES

**PLAINTIFF'S NOTICE OF MOTION AND**

**MOTION FOR SUMMARY JUDGEMENT;**

**MEMORANDUM OF POINTS AND**

**AUTHORITES IN SUPPORT THEREOF**

December 4th, 2023

8:30 AM

 HON. JUDGE DAVID O. CARTER

COURT ROOM: 10A

1
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

**TO ALL THE PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 4th, 2023, at 8:30 AM or as soon thereafter as this matter may be heard in the above-entitled Court located at 411 West Fourth Street Suite 4170 Santa Ana, CA 9270 Nicole Freeling, the Plaintiff in this case will move this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56. This motion is based on this notice, the memorandum of points and authorities filed herein, the declaration(s) filed by Plaintiff, the exhibits filed herein, the statement of uncontroverted facts and conclusions of law, the pleadings previously filed in this action, and any oral argument permitted at the hearing on this motion.

DATE:

By: _____
Nicole Freeling

2
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF

# I. <u>INTRODUCTION</u>

The Plaintiff Nicole is from Indiana who was hired by PCX, a company based in California. The company's CEO intentionally and willfully discriminated against the Plaintiff. Plaintiffs previously added exhibits from the (FAC) and recent new evidence of facts presented from depositions taken, written discovery along with production of documents requested will bring to light the defendant's corruption and unlawful discrimination. There are numerous inferences by supporting evidence that will show the Defendant's deliberate behavior of disparate treatment toward the Plaintiff. The evidence further reveals PCX violated both state and federal laws that prohibits discrimination based on race. The Defendants have not presented evidence that shows their reasons for Plaintiff's adverse action and unequal pay were not based on race. Defendants have not established a burden of proof required for their defense according to the law. The Defendant's sworn testimony taken in the depositions, and answers to interrogatories has no credence. The information provided will also show how Defendants have misrepresented facts and concealed important discoveries throughout this litigation process. This even further reveals their disingenuous cover up of race discrimination. The discovery the Defendants concealed has direct relevance to all Plaintiff claims and could have possibly even proven that they had not discriminated based on race. Therefore, Plaintiff moves for summary judgment based on the merits. The grounds and substantial matters of law to be argued on this motion are set forth below. This Motion will show as to First, Third, Fifth, Seventh, Eighth and Ninth Causes of Action of Plaintiffs Complaint that the facts are not disputed. Plaintiff is entitled to judgment as a matter of law.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

# ***Table of Contents***

*I. INTRODUCTION* ........................................................................................... *3*

*II. STANDARD OF REVIEW* ........................................................................ *6*

*III. ARGUMENT* ............................................................................................. *6*

*IV. CONCLUSION:* ...................................................................................... *28*

4
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

# *Table of Authorities*

*Cases;*

*See Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000);*

*Haynes v. Waste Connections, Inc., No. 17-2431 4th Cir*

*Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); Reno v. Baird, 18 Cal.4th 640, 647 (1998)*

*Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 850 (9th Cir. 2004).*

*Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), and Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013), Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1376 (9th Cir. 1994)*

*Skinner v. Maritz, Inc., 253 F.3d 337, 340 (8th Cir. 2001). In Patterson v. McLean Credit Union, 491 U.S. 164 (1989),*

*McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).*

*See Walther v. Lone Star Gas Co., 952 F.2d 119, 124 (5th Cir. 1992); Hansard v. Pepsi-Cola Metropolitan Bottling Co., 865 F.2d 1461, 1465 (5th Cir. 1989)*

*Everett v. Lake Martin Area United Way, 46 F. Supp.2d 1233, 1237 (M.D.Ala. 1999).*

*E.g. Aragon, 292 F.3d at 658; Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1125 (9th Cir. 2009).*

*See Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1214 (9th Cir. 2008) See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 143 (1st Cir. 2012*

*(Green v. Par Pools, Inc. (2003) 111 Cal.App.4th 620, 622-625, 629 [3 Cal.Rptr.3d 844].*

*(See Hall v. County of Los Angeles (2007) 148 Cal.App.4th 318, 324 [55 Cal.Rptr.3d 732]*

*Kolstad v. American Dental Association, 527 U.S. 526, 534-35 (1999*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).* To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. *See id.; Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989).* The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's assertion of fact as required by Rule 56(c). See Fed. R. Civ. P. 56(e). The responding party cannot point to mere allegations or denials contained in the pleadings. It is not enough for the non-moving party to produce a mere "scintilla" of evidence. *Celotex Corp., at 252.* Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. *See KRL v. Moore, 384 F. 3d 1105, 1110 (9th Cir. 2004).*

## III. <u>ARGUMENT</u>

### <u>First, Third, and Fifth Causes of Action: Disparate Treatment in violation of Section 1981, Title VII, and FEHA:</u>

6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Plaintiff is entitled to summary judgment as a matter of law as there is no genuine issue of material fact relating to Defendants discriminating based on race.

Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .." 42 U.S.C. § 2000e–2(a)(1). FEHA uses largely the same language and promotes the same objective as Title VII. See Cal. Gov. Code § 12940(a); *Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); Reno v. Baird, 18 Cal.4th 640, 647 (1998).* "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 850 (9th Cir. 2004).* As a result, the Title VII framework is applied to claims brought under Section 1981 and FEHA, including discrimination claims brought under a disparate treatment theory.

A plaintiff may establish a prima facie case of disparate treatment by showing: (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. *See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 354 (2000);* see also Peterson v. Hewlett–Packard Co., 358 F.3d 599, 603 (9th Cir. 2004) (setting forth substantially the same elements in the Title VII context). Often the fourth element is stated as "similarly situated individuals outside his protected class were treated more favorably." *See Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000); Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 658 (9th Cir. 2002).* See DKT order on motion to dismiss. *SEE DKT #38 pages 5-6*

Plaintiff complaint alleges all elements to support the claims of intentional racial discrimination for Section 1981, Title VII, and FEHA. Additionally, added to the record the dispositions and written discovery of the decision makers. The CEO Gil, and David Ratliff the new sales manager at the time. There is no question that Plaintiff, an African American woman was hired for this Sales role with PCX, ***See Exhibit 21 offer letter.*** Plaintiff was qualified for this position because Plaintiff has a sales background expanding over 20 years. ***See Plaintiff LinkedIn profile Exhibit 20***. As facts presented in (FAC) Plaintiff indeed suffered an adverse action of termination of the position with PCX, reasons told to the Plaintiff at the time of the firing was because plaintiff did not disclose misdemeanors on the application. A similarly situated individual who is Caucasian was treated for favorably than African Americans in the same new training class with same

7

account sales position. This person was offered more money, she was treated with respect in training, and she did not suffer an adverse action for not disclosing or having misdemeanors that were more recent and severe than the Plaintiff. ***See FAC (non-trial exhibits) DKT #13 Exhibit 13.***

**Section 1981:**

Defendants had the intent to discriminate when firing Plaintiff and the other African American Devon in the same week. ***See testimony of Devon Carter Declaration Exhibit 22***. The training for us African Americans was not structured to help us learn the job we were hire for instead we were racially profiled, scrutinized, and ridiculed. Defendants stated "after watching" the plaintiff. ***See Exhibit 23 position statement***. To reiterate all three new hires were hired for the same position and the African American was offered less for the same work both African American were subjected to harsh discipline actions in the same week Gil Aouizerat admitting to firing both in the same week ***See Exhibit 14 Deposition of Gil Aouizerat page 78 lines 7-17***. It was alarming when Defendant was asked to state the race of the new hires, he identifies Jenna as an Italian then he identified Plaintiff and Devon as African American and then he added the word "culture" behind it. Stereotyping the new black hires ***See Exhibit 14 Deposition of Gil Aouizerat page 11 lines 11-25.*** Plaintiff produced evidence showing how I was singled out accused of lying on application. The same similarly situated individual has inaccuracies in her application that will be revealed in this motion. *Haynes v. Waste Connections, Inc., No. 17-2431 4th Cir.* All these reasons lead me to believe if it was not but for my race PCX would not have caused me to suffer economic and emotional injuries due to the intentional discrimination. *Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), and Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338*

8

*(2013),* Defendants stated an Affirmative Defense in their answer to the Complaint they never entered into a contract with the Plaintiff, this is not correct. Plaintiff was hired by PCX which included the onboarding process documents, the signing of the handbook and the offer letter. ***See Exhibit 21 offer letter***. However, Section 1981 prohibits racial discrimination in the making and enforcement of contracts. Since the 1991 amendments to § 1981, this includes not only the making and enforcement of contracts, but also the performance, modification, and termination of such contracts. 42 U.S.C. § 1981(b). An employment contract is an agreement setting forth "terms and conditions" of employment *Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1376 (9th Cir. 1994)* at-will employment can serve as the predicate contract for a discrimination claim under Section 1981. *Skinner v. Maritz, Inc., 253 F.3d 337, 340 (8th Cir. 2001). In Patterson v. McLean Credit Union, 491 U.S. 164 (1989),* the Supreme Court restricted the application of Section 1981 to claims arising out of the formation of the contract. But the Civil Rights Act of 1991 legislatively overruled the Supreme Court's decision in Patterson, providing that the clause "to make and enforce contracts" in Section 1981 "includes the making,

**Termination pretext:**

The Ninth Circuit has stated "that a plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang, 225 F.3d at 1127 (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220-22 (9th Cir. 1998), as amended (Aug. 11, 1998). Applying the standard of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).* Plaintiff established a prima facie case for race

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

discrimination. Defendant's reasons for the adverse action have inference of pretext and has continued to change and shift throughout this litigation.

On June 25th, 2022, Plaintiff received the call from David Ratliff to terminate the position, he stated the reason for the termination of the position was because of Plaintiff's background and the application. During the call he never stated any other reason. ***See FAC pages 9, 10 paragraphs 32 and 33*** **And the** ***Declaration of Nicole Exhibit 25***. **June 27, 2022,** Plaintiff was given an adverse letter stating the reasons for what they called "taking back the offer" this letter refers to the reason again stating "background" nothing about training or performance ever mentioned. This letter was also signed by the CEO Gil Aouizerat. ***See FAC (non-trial exhibits) DKT #13 Exhibit 5b & See Exhibit 14 Deposition of Gil Aouizerat page 44 lines 2-8.***

On August 8, 2022, the Defendants were required by the EEOC to give a statement addressing the Plaintiff allegations. In their position statement, (a sworn document), the defendants then added "training, skills and after watching her she would not be successful". The letter then states in the third paragraph "Ms. Freeling was contacted by phone and informed she was terminated because she failed to disclose misdemeanor convictions on her record". ***See Exhibit 23 EEOC position statement.***

June 5, 2023, during the first hearing held in reference to the Motions. The Honorable Judge Carter asked the Defense Counsel did they fire Plaintiff for not disclosing misdemeanors. The Defense Counsel said to Judge Carter "Yes, and other misdemeanors" never during the hearing did Defense Counsel raise a defense stating, "performance reasons". July 12, 2023, the disposition of Gil was taken. Mr. Aouizerat reasons given in his deposition are false and contradictory. First, the Defendant testified that he gave Plaintiff a conditional offer based on

10

being successful in the training. ***See Exhibit 14 Deposition of Gil Aouizerat page 15 lines 1-22.*** Plaintiff's conditional offer from PCX has no mention of training as a part of the condition and neither was Plaintiff ever told this during the interviews or during training. ***See Exhibit 21***. When Plaintiff asked him during the deposition why was the employment terminated the Defendant respond by saying you didn't have the "right stuff" ***See Exhibit 14 Deposition of Gil Aouizerat page 16 lines 1-25*** Throughout the deposition the Defendants continue to contradict with inaccuracies and a fabricated narrative for the reasons of my termination. When asked who made the decision Gil Aouizerat testified numerous times that it was David Ratliff and Sarah and he only signed off on it. The Defendant shifted the blame to David Ratliff which contradicts everything David said on June 25, 2022, and what David Ratliff testified to in his deposition on July 14, 2023, ***See Exhibit 15 deposition of David Ratliff page 8 lines 10-22***. Not only does the Defendants lack documentation but failed to produce any documents of evaluations and they have no notation of these discussions made about the Plaintiff. The two days in Sandler training were a big part of the sales training process with PCX. We did more training in Sandler than inside of the PCX office. During the Sandler training there was a lot of role playing, different coaching activities and tests. Plaintiff attached the certificate of Sandler completion ***See FAC (non-trial exhibits) DKT #13 Exhibit 3***

We were told Sandler was one of the reasons they flew us out. For Gil Aouizerat to now downplay the Sandler training makes no logical sense. He stated it is no big deal and they didn't use Sandler course to evaluate. The Sandler instructor could have a different evaluation from what the Defendants are stating about the Plaintiffs skills in training. ***See Exhibit 14 Deposition of Gil Aouizerat pages 17-22***

11
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Additionally, Defendants were asked about Plaintiff's background being reasons for termination in Gil Aouizerat deposition, the responses were a mixture of reasons surrounding "Plaintiff is not qualified to work on government accounts". The Defendant testifies that Plaintiff would not qualify because Plaintiff's name did not match, which is another misleading fact he speaks of the letter H being added to my name Nicole which is not the correct spelling. I was very clear with the Defendants during the onboarding process.  I Informed them I spelled my name Nicole not Nichole (when I got my ID issued the BMV worker added this (h) by mistake) they insisted on me using Nichole and I was okay with that. The deception with this is the Defendants testified that Plaintiff was hired to work on his Government Contract (Boeing) this is another deception because when all three the new account sales reps were hired on June 20, 2022, it was repeated several times by Management we would not be on the government contract side of selling in the beginning. Furthermore, Defendants knew all about the spelling of my name during the onboarding process and why they never raised these concerns immediately if they hired Plaintiff to work on "Boeing accounts". Next Defendants states that Plaintiff has "Fraud convection", another misleading of material fact ***See Exhibit 24 Plaintiff full My case record.*** Plaintiff has no fraud or felonies. Throughout this deposition Defendant continues to state the many reasons Plaintiff would not qualify for the company because PCX is a federal contractor. He even testifies that Plaintiff's reason for the termination had nothing to do with background criminal history after all, but it was all because Plaintiff would not have been successful, and the background was "an addition to" ***See Exhibit 14 Deposition of Gil Aouizerat page 31-43.*** Another bizarre contradiction he testifies to ***See Exhibit 14 Deposition of Gil Aouizerat page 43 lines 5-9.***  When I address the reasons being different from what David said on 6/25/22 Gil

12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Aouizerat asks me "if I had it in writing" because he was never told what took place over the phone call and he was not a part of that conversation. This statement of him not knowing what was spoken over the phone is not true because he told David what to say and it contradicts the Adverse letter sent on **6/27/22** *See FAC (non-trial exhibits) DKT 13 Exhibit 5b.*

The Defendant testified many times about the government's background checks and everything must be perfect. Plaintiff agrees that the government may do their own background check when you are a federal contractor. That's the reason why it's concerning that PCX has higher standards for the Plaintiff to meet than the Federal government agencies. Defendants may not be aware that Plaintiff has been registered as a federal government contractor since 2021 and can sell to any government agency. Plaintiff completed the process and certifications to sell services to the government in 2021. Plaintiff never had any criminal background concerns from the government nor did the government have issues with the spelling of my name. *See Plaintiff Profile as Government Contractor Exhibit 26*

**David Ratliff:**

There have been contradictions pertaining to the Sales manager David Ratliff's involvement in the discrimination. David was hired as a new sales manager with PCX with the same hire date as the Plaintiff. David would have overseen the remote sales team. He lived and is still currently living in Virginia. Both David and Gil have inconsistencies in their testimonies. June 5, 2023, Plaintiff received ordered to take deposition of David Ratliff **See** *Court order on expedited discovery DKT # 22* At the time Plaintiff was not aware that David was no longer an employee at PCX until the Defense disclosed this through email to the Court's Deputy Clerk days after the hearing. The Defense also tried to provide another person to depose which they suggested Sara

13

the VP of Sale. Plaintiff had a contact number for David from the prior year. Plaintiff chose to depose David because David was there in every part of the training, he participated in every step that involved Plaintiff. Again, David was the person to call Plaintiff and gave the initial reason for the termination. David has vital information pertaining to all the Plaintiffs' allegations. Plaintiff called to inform David about the deposition on June 6th, 2023, David at the time stated he doesn't remember much about what happened. Plaintiff informed David that she would send him a copy of the EEOC complaint to refresh his memory. After the email was sent David later responded, he remembers now. In David's email he states the termination reason was because of Plaintiff's background which was identical to what he stated on phone call a year earlier. ***See David's email exhibit 27***. Plaintiff scheduled David deposition for June 16th, 2023, these dates were agreed upon by Plaintiff and David Ratliff. The day before scheduled deposition Plaintiff received an email from the opposing counsel stating allegations that David was being pressured into taking a deposition, he stated this in email along with David cc on it he then tells David this was not a court order, and they are objecting to Plaintiffs notice of the deposition. The Defendants interfered and stopped David from taking a deposition that day ***See Plaintiff Response with attached exhibits to the Defendant's objections DKT # 26 & 27***. The deposition of David Ratliff was finally taken on July 14th. David confirms that he was a new hire and his first day was 6/20/22 ***See Exhibit 15 David Ratliff deposition Page 6 lines 2-6 & See David Ratliff application conditional offer start date Exhibit 28***. Gil Aouizerat testifies that David was not one of the four new hires the week of 6/20/23. He said that David had been an employee with the company, and he was not the fourth employee. (**This was not true**) ***See Exhibit 14 Deposition of Gil Aouizerat page 11 lines 4-25 & page 12 lines 2-12.*** By the time David took

14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

the deposition he had been in direct contact with the Defendants. When Plaintiff asks David reasons for the termination during the deposition this is first time, he states anything about Gil and Sara saying, "If Nicole would be successful or not" ***See David Ratlif deposition page 7 lines 23-25 and page 8 lines 1-9***

**Performance Pretext:**

As highlighted throughout this brief, the Defendants have raised many inferences surrounding the Plaintiff being terminated because of performance reasons. Mr. Aouizerat testified that Plaintiff was very "thin skinned" and lacked abilities to take criticism in training. His answers were again fabricated; he couldn't provide a direct example because none existed. When asked why Defendants never spoke to Plaintiff about their performance concerns Mr. Aouizerat testifies "that's not how they work ". He insists that David and Sara talk amongst themselves and made the decision. When asked if they kept any documentation of these incidents, again they have nothing documented. *See Walther v. Lone Star Gas Co., 952 F.2d 119, 124 (5th Cir. 1992); Hansard v. Pepsi-Cola Metropolitan Bottling Co., 865 F.2d 1461, 1465 (5th Cir. 1989)*

***See Exhibit 14 Deposition of Gil Aouizerat page 43-48***

Plaintiff sent Defendant's Interrogatories on July 26, 2023. When Plaintiff asked them to list all reasons for her termination Mr. Aouizerat dramatized more fabrications for the reasons of termination not just "thinned skinned", but Mr. Aouizerat testified Plaintiff was "emotional/or borderline angry/or defensive". ***See Exhibit 16 Defendants response to Interrogatories #5* (This is not true)**. This contradicts who I am my professionalism; This also contradicts what David Ratliff testified about my behavior while there. ***See Exhibit 15 deposition of David Ratliff Page 9 lines 15-20***. David Ratliff testifies to being "shocked" about my termination If he had indeed

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

witnessed this type of behavior from Plaintiff it wouldn't have been a shock. ***See Exhibit 15 deposition of David Ratlif Page 10 lines 7-18.*** I began to weep a little during this deposition not because of me being "thin skinned" it was the validation from David's answer to that question that exposed another lie that Gil Aouizerat testified to. Plaintiff then asked David Ratliff during the week we were all there if there was anything spoken to him by anyone about my performance he answered "No**". *See Exhibit 15 David Ratliff deposition page 11 lines 3-13. See exhibit 16 Defendant response to Interrogatories number # 12*** Defendant answered under oath when Plaintiff asked whether written or oral evaluations were given pertaining to my performance in training.

Mr. Aouizerat answered "Oral" this is not true again it contradicts what he previously testified in his deposition a couple of months prior when stated there were no evaluations given to the Plaintiff Oral or Written. *Everett v. Lake Martin Area United Way, 46 F. Supp.2d 1233, 1237 (M.D.Ala. 1999).* The Defendant criteria used to evaluate the Plaintiff was entirely subjective.

## Similarly situated individuals:

There is no argument the Defendants have treated similarly situated individuals more favorably than Plaintiff *E.g. Aragon, 292 F.3d at 658; Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1125 (9th Cir. 2009).* Plaintiff describes Jenna as a similarly situated individual who is Caucasian and began to work for PCX at the same time doing the same work. As mentioned in (FAC) it was revealed that this she was offered more money than Plaintiff and the other African American, and we could see she was treated more favorably; she was never put down or criticized by the CEO in training. ***See Exhibit 22 declaration of Devon Carter paragraph 12 and 13.*** Through discovery Plaintiff requested production of documents from the Defendants ***See***

***Exhibit 17 Defendants response Request for production of documents. #16****: Although Defendants did not cooperate with this request entirely because they blacked out all names of the applicants and did not identify any records by race or gender.  However, I can see the dates of the application, conditional offers and lastly the background screening. Each document pertains to a Bates stamp done by their Attorney. It is verified that only one African American is employed at PCX because Mr. Aouizerat testified to it. It's also very clear that a false statement was made to the EEOC in their position statement where they stated they have African Americans in executive and management roles, but this was never true. Defendant also testified that he fired both African Americans within the same week. ***See Exhibit 14 Deposition of Gil Aouizerat pages 78-79 & See Defendants position statement Exhibit 21.*** Defendant testimony in the answering interrogatory question stated, "please identify all criminal history of plaintiffs that would disqualify her with PCX because they're a government contractor" Defendants answered, "all misdemeanors" ***See Exhibit 16 Defendant response to interrogatory number #11.*** Defendant testified in his deposition on July 12th, 2023, that he hires employees that have misdemeanors or felonies; it just depends, is what he stated. ***See Exhibit 14 Deposition of Gil Aouizerat page 89 lines 14-25. See Exhibit 16 Defendants' answer to interrogatory question number #16***. When ask to identify the types of misdemeanors or felonies that he allows, Gil replied "PCX have very few applicants with legal issues, prior to miss Freeling all has disclosed them in advance and most of those were DUIs or traffic violations and all made those disclosures in the interview process" this statement is dishonest for a few reasons one being Plaintiff was able to identify the similarly situated individual Jenna spoken about in (FAC) when the Defendants produced those document of the application, conditional offers and background

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

screening in discovery. Plaintiff was able to identify Jenna's by her location, the date of the application and her start date, it showed her employment background as being insurance and finally some misdemeanors that showed up from the public records reports that plaintiff produced to the courts in (FAC). Out of all the applications produced this one which can be identified as Jenna's looks to be photocopy different from the others that were produced however the date of start showed 6/20/2022 and her professional license was Casualty Insurance which Jenna discloses to me during the time of being there at PCX, so this indeed is Jenna's application. The first inaccuracy on the application is the driver's license part. Jenna discloses that she has a traffic ticket violation within the 7 years which is true from the public record report, however if you go to the criminal history background screening that is connected to Jenna's application that the Defendants produced it to shows no violations for speeding or her suspended license from 2019. The report shows no background not even what she disclosed. This report has been altered. Another inaccuracy was the question on the criminal history Jenna disclosed an incident from 2003 but all the others were not disclosed on this application. ***See Exhibit 31 Defendants produced documents titled RPD #8 pages 18-27 Bates stamp DEF00348-DEF000357 and See public records reports See FAC (non-trial exhibits) DKT # 13 Exhibit 13.*** Most of these records the Defendants produced has indicated deception and cover-ups, but I'll highlight only one more to respect Court's time in this brief. This Record of another applicant who also disclosed traffic violations along with a DUIs and an Aggravated assault, (***Defendants deny to hiring felons See Exhibit 19 Defendants response to admission #17***) However this person background screening report was also altered and did not show or disclose any convictions of this applicant, the background screening report looks as though he or she has none. ***See Exhibit***

18

***34 Defendants produced documents titled RPD #8 pages 73-80 Bates stamps DEF000606-DEF000613***. Plaintiff attached her background screening report provided by PCX that shows what the full unaltered report looks like ***See Exhibit 47***

**<u>PCX's Policy:</u>**

 There is no argument that Defendants had a policy in place and did not follow any of it when it came to the Plaintiff. ***See FAC (non-trial exhibits) DKT #13 Exhibit 11***. When Plaintiff asked Mr. Aouizerat to read what his policy says about how PCX handles performances, it was clear that none of those steps were taken. When asked why this procedure was not available to the Plaintiff, Gil Aouizerat testifies "they have 30-, 60-, and 90-day reviews and you didn't make it that far'. Plaintiff asked if the 30,60, 90 reviews are in the policy, Defendant states' ' that's just our policy, it's not in the handbook". Then he adds another 90-day probation period. This is nowhere in the handbook either and was never communicated during training. When Plaintiff asked were any of the options in the policy available to her Mr. Gil Aouizerat says "that would be between you and your supervisor (David Ratliff). When asked if he encourages David to follow policy rules he states again "you didn't make it past the fifth day". ***See Exhibit 14 Deposition of Gil Aouizerat page.26-30.*** Defendants were also asked about breaking their policy rules when it came to releasing final paychecks. His excuse was to blame the HR, ADP, and the Postal mail for not releasing checks on time.  ***See Exhibit 14 Deposition of Gil Aouizerat page. 55-66***. Based on this evidence Defendants had disturbing procedural irregularities when it came to the Plaintiff. *See Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1214 (9th Cir. 2008) See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 143 (1st Cir. 2012)* Accordingly, the facts are undisputed, and Plaintiff has demonstrated she is entitled to judgment as a matter of law

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

on Section 1981, Title VII and FEHA claims against Defendants. Summary Judgment in

Plaintiff's favor is appropriate in this case based on the undisputed facts.

### Seventh Cause of Action the California Equal Pay Act

*(Green v. Par Pools, Inc. (2003) 111 Cal.App.4th 620, 622-625, 629 [3 Cal.Rptr.3d 844].*

There is no argument that defendants violated the California Equal pay act when they paid

Plaintiff and another African American less wages than similarly situated individuals who is

White. There is language in cases, however, that suggests that a single comparator (e.g., one

woman to one man) is sufficient. *(See Hall v. County of Los Angeles (2007) 148 Cal.App.4th

318, 324 [55 Cal.Rptr.3d 732]*

Plaintiff Nicole Freeling and Devon Carter who are Black were paid less than the rate paid to

Jenna who is White, Jenna disclosed to us both on different occasions that she had the higher

salary offer. ***See (FAC) page 6 par. 21-22*** **and** ***Declaration of Devon Carter # 13*** Nicole and

Devon Carter were hired for the same Account executive sales position performing substantially

similar work as Jenna, all our positions held requiring the same skill, effort, and responsibility.

***See Declaration of Devon Carter # 9*** Nicole and Devon Carter were working under similar and

same working conditions as Jenna. These Account Executive roles were all remote positions. We

had the same responsibilities, the same hours, we all attended the same training and we all had

the same manager, David Ratliff. Gil Aouizerat testified in the deposition that all three new hires

that began training on 6/20/22 were indeed Account managers for the sales roles. When asked

why Jenna had a higher pay than the African Americans he stated, "Our offers for account

manager roles always depend upon experience". Plaintiff asks him to explain what he means by

"experience". Gil Aouizerat stated that "some people have more sales experience than others and

20

are the ones that tend to get a higher offer". ***See Exhibit 14 Deposition of Gil Aouizerat page. 12-14.*** Jenna sales experience on the PCX application they produced ***See Exhibit 34 Defendants produced documents titled RPD #8 page 19*** has sales background but no references for electronic components. It was made known out of the three new hires none came from the electronic component industry. This is the reason Plaintiff was told her offer changed with the offer letter. ***See (FAC) page 4 par 10.*** Defendants provided no evidence to show or justify the pay differential based on the law standards.

(1) a seniority system (differences in pay based on the length of service with the employer); (2) a merit system (e.g. differences in pay based on written performance evaluations); (3) a system that measures earnings by quantity or quality of production (e.g. piece rate work, automobile mechanics paid based on each repair job completed); or (4) a bona fide factor other than sex, such as education, training, or experience. California Labor Code §1197.5 (a)

Defendants have yet to provide any evidence to prove a bona fide factor other than race. Defendants have not met the burden of showing that the experience required for a higher pay fall in line with business necessity for the sales role. Defendants failed to answer discovery questions about who replaced positions of both African American in discovery.

Plaintiff's discovery for the request for production of documents it was discovered a few of the applicants that replaced those positions. It was obvious by the dates on the application and conditional offers showing they were hired a month or two after the Plaintiff termination. Defendants previously testified to having only one African American in PCX purchasing department. Those replacements were not African American. It's alarming that these replacements were offered much higher salaries for the same Account sales position and none of

21

their employment history detailed anything about the electronic components industry. I have provided two of the replacements applications and their conditional offers ***See Exhibit 33 Defendants produced documents titled RPD # 10 pages 12- 23 Bates stamp DEF000480-DEF000491 and pages 36-43 Bates stamp DEF000504-DEF00051.***

PCX has a LinkedIn company page that is very updated. On their LinkedIn page it shows they have 63 employees not 36 like that Defendants stated in the court hearing on July 14, 2023. The page shows the employees' photos, and the month and year they began working for PCX. As I searched every single employee with the Account manager sales title with start dates between July 2022- Oct 2022 I did not find any that is African American. Attaching **PCX LinkedIn company's page with Account managers employees *See Exhibit 37*.** Accordingly, the facts here are undisputed, and Plaintiff has demonstrated she is entitled to judgment as a matter of law on California Equal Pay Act claim against Defendants. Summary Judgment in Plaintiff's favor is appropriate in this case based on the undisputed facts.

### Eight Cause of Action the California Fair Chance Act (Banned the Box)

(Public and private employers with five or more employees are covered by the law. This includes union hiring halls, labor contractors, temporary employment agencies, and client employers. The law does not apply to certain positions at health care facilities, farm labor contractors, or positions with state criminal justice agencies. It also does not apply to any position where an employer is required by another law to conduct background checks or restrict employment based on criminal history. However, while employers do not have to comply with the requirements of the Fair Chance Act when hiring for such positions, their use of criminal history may still be challenged as discriminatory if it has an adverse impact on individuals in a protected basis (such as race). In such cases, the employer must show that the consideration of criminal history is job-related and consistent with business necessity. Even if the consideration of criminal history is job-related and consistent with business necessity, it will be unlawful if there is a less discriminatory way to meet the business necessity).

Defendants had discriminatory intent when they failed to abide by the Fair Chance Act by using the Plaintiff's criminal history and application for terminating the position with PCX. As stated in

22

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

this motion, the Plaintiff was told by David the reason for firing was because of something on my criminal history and not checking the box on the application. Then Plaintiff was sent an adverse letter by PCX HR manager signed by the CEO Gil Aouizerat stating Plaintiff's offer was taken back because of something on my background. Again, in the position statement to the EEOC they stated reasons for being Misdemeanors of driving on suspended license they also added charges of two misdemeanors from 20 years ago criminal conversion and the other is cable deception. *See Exhibit 21.* Plaintiff had no reasons or intent to lie on PCX's application as Defendants has stated. I read the instructions and checked no because of not having any driving in fractions within the 7 years *Exhibit 25 SEE Declaration # 16*

Although Defendant testified in his deposition of not knowing what the Fair Chance law is *See Exhibit 14 Deposition of Gil Aouizerat page 34 9-22*. It seems that PCX followed the requirements of The Fair Chance law in the beginning stages because first they made a conditional offer second, they did not do a background check until after the conditional offer was accepted. Where the defendants failed to follow the law was after the background check was received and they terminated the Plaintiff without following the procedures of the Fair Chance Act. PCX never considered the kind of misdemeanors or the time of the misdemeanors pertaining to the Plaintiff. They never asked any questions about the application or any offenses, they did not put it in writing to allow the plaintiff to respond if they would have it would have been resolved immediately. Defendant's affirmative defense is "exempt" because of PCX, INC. Is a federal government contractor. Defendants stated the in the *26 f Report See Dkt #21 on page 2* "As a government contractor pursuant to **10 U.S.C 4656** it is a "crime" for Defendant to employ anyone convicted of fraud and PCX is exempt from the provision of The Fair Chance

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Act codified under California Code section 12952". This is a dishonest and misleading statement because Plaintiff has never been charged with fraud; it's nowhere in my background. The Defense knows all Plaintiff charges. If they are using cable deception to label this as fraud this is misleading the Court because cable deception is a misdemeanor and fraud is a felony. Furthermore, the statement of this statute that they are claiming to make PCX exempt **10 U.S.C 4656** is also misleading the Court because if you read what this is and what the statute clearly addresses this has absolutely nothing to do with the Plaintiff position as employee with PCX, or the Fair Chance Act. ***SEE exhibit 39 the statute 10 U.S.C 4656.*** Defendant testified and contradicted his own defense in his deposition stating he never said they are exempt. ***See Exhibit 14 Deposition of Gil Aouizerat page.36 lines 14-25 & page 37 lines 2-8.***

Defendants did not produce any valid evidence showing they are exempt because of being a Federal Government Contractor. When Plaintiff asked them to produce documents, they gave Plaintiff the DFARS which is a handbook for all federal government contracts that was over 1,383 pages PDF. Anyone can google DFARS handbook online.  Plaintiff did find anything in there specifically stating that Federal contractors are exempt from the Fair Chance Act. As a federal government contractor PCX is required compliance with Office of Federal Contract Compliance Programs (OFCCP), The OFCCP has the same compliance as EEOC, but this division is for Federal Contractors only.

(OFCCP holds those who do business with the federal government (contractors and subcontractors) responsible for complying with the legal requirement to take affirmative action and not discriminate on the basis of race, color, sex, sexual orientation, gender identity, religion, national origin, disability, or status as a protected veteran. In addition, contractors and subcontractors are prohibited from discharging or otherwise discriminating against applicants or

24

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

employees who inquire about, discuss, or disclose their compensation or that of others, subject to certain limitations.)

If PCX reveals their true employee count is more than 50 employees on record, they will be required by OFCCP to annually provide data in an affirmative action report. The annual report would have to show their current procedures and steps to hiring minorities and women. If not in compliance PCX can get an audit and possibly debarment as a federal contractor. PCX claims to be under the 50 employee requirements. However, they are still required to abide by all the federal discrimination laws.

As a federal government contractor PCX is not exempt and should not discriminate based on race using Plaintiff's criminal history *SEE Exhibit 41 DOJ and OFCC*

Accordingly, the facts here are undisputed, and Plaintiff has demonstrated she is entitled to judgment as a matter of law on The Fair Chance ACT claim against Defendants. Summary Judgment in Plaintiff's favor is appropriate in this case based on the undisputed facts.

**<u>Ninth Cause of Action California Waiting Time Penalties for "Unpaid Wages" After Termination.</u>**

California law requires employers to pay wages immediately if terminated or resign with 72-hours' notice there is no argument Defendants violated labor code *§201* when PCX did not release the final paycheck to the Plaintiff upon termination. Defendants were asked why Plaintiffs' paycheck was not released on June 25th, 2022, when the call was made to terminate or Monday June 27, 2022, the next business day. Again Mr. Aouizerat places the blame on the Human Resource Manager, ADP, and US Postal mail. He never talked about how they withheld payment until the equipment was returned. *FAC par 35 and 41*. When Plaintiff asked Mr.

25
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Aouizerat about the policy and why it was not followed, he tried to rationalize reasons for not following his policy or the law. ***See Exhibit 14 Deposition of Gil Aouizerat pages 55-66***. Mr. Aouizerat was asked in this same deposition if he had ever been accused of not paying employees on time. His response "We've never had an issue that I'm aware of" ***See Exhibit 14 Deposition of Gil Aouizerat page 65 lines 2-24*** Mr. Aouizerat was asked this same question in Plaintiff's request for interrogatories. Mr. Aouizerat response: "Only Nicole Freeling" ***See Exhibit 16 Interrogatory response No. 23*** His answer stating that Nicole Freeling is the "only one" is disturbing and not true because PCX was involved in a previous lawsuit and the case went to the California Court of Appeal ***Gordon v. Pacific Component Xchange***. The case was about a dispute on commission and parts; however, the case shows that PCX has in fact been in involved in a previous lawsuit for a labor code violation for not Immediately release of funds upon termination. Please **See *Gordon v. Pacific Component Xchange Exhibit 40.*** Accordingly, the facts here are undisputed, and Plaintiff has demonstrated she is entitled to judgment as a matter of law on The Labor Code Late Pay Penalties claim against Defendants. Summary Judgment in Plaintiff's favor is appropriate in this case based on the undisputed facts.

## DAMAGES;

Plaintiff is entitled under the law to recover compensatory damages under Section 1981, Title VII and FEHA.

Plaintiff seeks both economic and emotional damages for the harm caused by PCX.

Plaintiff is entitled under the law to recover damages from Title VII, Section 1981, and FEHA for the economic injuries that have been caused due to the Defendants unlawful discrimination by PCX. ***See Exhibit 25 Plaintiff Declaration***

26
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

Plaintiff is entitled under the law to recover damages From Title VII, Section 1981, and FEHA for the emotional harm suffered because of the Defendants discrimination; ***See Exhibit 25 Plaintiff Declaration, and Exhibit 45 & Exhibit 48***

Plaintiff is entitled under the law to difference in wages, interest, and an equal amount as liquidated damages for Defendants violating the California Equal Act;

Plaintiff is entitled under the law to recover all available damages under the California Fair Chance Act;

Plaintiff is entitled under the law to Punitive damages under Section 1981, Title VII, FEHA; Defendant's conduct was malicious, oppressive, and reckless disregard of the plaintiff's rights. The evidence brought forth shows that the Defendant's conduct is malicious; it is accompanied by ill will, or spite, or and for the purpose of injuring the plaintiff. Their conduct was in reckless disregard of the plaintiff's rights under the circumstances, it reflects complete indifference to the plaintiff's safety and rights, the Defendant acts in the face of a perceived risk that their actions did violate the plaintiff's rights under federal law.

In *Kolstad v. American Dental Association, 527 U.S. 526, 534-35 (1999),* the Supreme Court held that plaintiffs are not required to show egregious or outrageous discrimination in order to recover punitive damages under Title VII The Court read 42 U.S.C. § 1981a to mean, however, that proof of intentional discrimination is not enough in itself to justify an award of punitive damages, because the statute suggests a congressional intent to authorize punitive awards "in only a subset of cases involving intentional discrimination." Therefore, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad, 527 U.S. at 536.* The Court further held that an employer may be held liable for a punitive damage award for the intentionally discriminatory conduct of its employee only if the employee served the employer in a managerial capacity, committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good faith efforts to comply with federal law. Kolstad, 527 U.S. at 545-46

27

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**

# IV.  <u>CONCLUSION</u>:

WHEREFORE, Plaintiff Nicole Freeling and pursuant to Federal Rule of Civil Procedure 56, respectfully moves the Court to enter judgement in her favor and against Defendants on all remaining claims alleged in the Frist Amendment Complaint and to grant all just and proper relief.

DATE: November 1, 2023,                    Respectfully submitted,

<u>Nicole Freeling</u>
Nicole Freeling Pro Se.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**